\UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JAMES E. BAY,                          )
                                       )
                  Plaintiff,           )
                                       )
v.                                     )      No.:   3:06-CV-306
                                       )             (VARLAN/GUYTON)
FAIRFIELD RESORTS, INC. and            )
CENDANT TIMESHARE RESORT               )
GROUP, INC.,                           )
                                       )
                  Defendants.          )

## MEMORANDUM OPINION

This civil action is before the Court on the Defendants' Motion for Summary

Judgment [Doc. 22]. Plaintiff, James E. Bay ("Mr. Bay"), claims that the Defendants,

Fairfield Resorts, Inc. ("Fairfield") and Cendant Timeshare Resort Group, Inc. ("Cendant")

(hereinafter collectively referred to as the "Defendants"), discriminated against him in

violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*

[Doc. 1 at ¶ 6.] More specifically, he claims (1) age discrimination for various acts by

Cendant and (2) a hostile work environment. In their motion for summary judgment, the

Defendants argue that, pursuant to Fed. R. Civ. P. 56, they are entitled to judgment as a

matter of law as to Mr. Bay's ADEA claims because there is no genuine issue as to any

material fact. [Doc. 23 at 1.] Mr. Bay opposes Defendants' motion and contends disputed

material facts exist in this case. [Doc. 37.] Specifically, Mr. Bay argues that the Defendants'

contention that he was not qualified by either education or experience to fill the job of Vice President for Cendant Timeshare Resort Group is mere pretext. [Doc. 37 at 2.]

The Court has carefully reviewed the pending motion, along with the supporting and opposing briefs in light of the entire record and controlling law. For the reasons set forth herein, Defendants' motion for summary judgment will be **GRANTED**.

## I.    Relevant Facts

Defendant Fairfield was a company whose business involved designing, constructing, maintaining, and selling timeshare resort units. [Docs. 24, 40 at ¶ 1.] The Plaintiff, Mr. Bay, began his employment with Fairfield on or about October 16, 1982. [*Id.* at ¶ 12.] With the exception of a brief separation from 1991 to 1995, Mr. Bay was employed by Fairfield as a Director of Construction. [*Id.* at ¶ 13.] In or around April 2, 2001, Defendant Cendant purchased Fairfield and assumed the same operations in which Fairfield was engaged. [*Id.* at ¶ 2.] Throughout his employment with Fairfield and Cendant, Mr. Bay lived in or around Knoxville, Tennessee. [*Id.* at ¶ 11.] After the purchase of Fairfield, Mr. Bay continued to work for Cendant as a Director of Construction. [*Id.* at ¶ 3.] Construction Directors oversee, design, and construct timeshare resort buildings at assigned locations throughout the region where the Construction Director is assigned. [*Id.* at ¶ 15.]

After purchasing Fairfield, Cendant undertook a corporate reorganization. [*Id.* at ¶ 6.] Around July 2004, Cendant's Senior Vice President of Resort Development, Jerry Piro ("Mr. Piro"), was hired to help with the reorganization and to better equip Cendant to be

competitive in the timeshare market. [*Id.* at ¶ 7.] Defendants contend that Mr. Piro instituted changes to the corporate culture, such as requiring increased accountability and requiring "more degreed people in upper management positions." [*Id.* at ¶ 8.] Mr. Piro instituted several policy changes in Cendant's Construction Department, including requiring all Directors of Construction to be present in Cendant's Orlando's office for meetings every Monday and planning on the future relocation of all Directors of Construction and higher positions to Cendant's Corporate Headquarters in Orlando, Florida. [*Id.* at ¶ 9.]

In October of 2004, Mr. Piro met with Mr. Bay to discuss Mr. Bay's role in Cendant. [*Id.* at ¶¶ 18, 19.] During this meeting, they discussed Mr. Bay's eventual relocation to Orlando. [*Id.* at ¶ 22.] Mr. Bay informed Mr. Piro that he had recently purchased a home in Knoxville and did not want to move. [*Id.*] As to the issue of relocating to Orlando, Mr. Bay states, "I told [Mr. Piro] it would not be something I really wanted to do. But I did not refuse to do it." [Doc. 24-2 at 6.] In October of 2004, Mr. Bay learned that Mr. Piro wanted him to be in Orlando once a week for meetings. [Docs. 24, 40 at ¶ 97.] From October of 2004 through June 2005, Mr. Bay attended four or five meetings in Orlando. [*Id.* at ¶ 98.]

In the summer of 2004, Mark Rogers ("Mr. Rogers") informed Cendant of his resignation from the Vice President of Construction position. [*Id.* at ¶ 24.] Mr. Piro was charged with the responsibility of filling the vacant position. [*Id.* at ¶ 25.] Cendant required the new Vice President of Construction to be located in Orlando. [*Id.* at ¶ 38.] The job description for the Vice President of Construction position required a "college or masters degree in construction management, engineering, architecture, or a similar field and

reinforced, concrete high-rise new construction experience." [*Id.* at ¶ 26.] Mr. Bay disputes the Defendant's contention that "he had any knowledge or understanding that his lack of a college degree disqualified him from consideration for a Vice President of Construction position vacated by Mark Rogers." [Doc. 40 at ¶ 8.]

Mr. Bay did not tell Mr. Piro that he was interested in the Vice President of Construction position, but he talked to Mr. Rogers about the Vice President position. [Doc. 24-2 at 11.] Specifically, Mr. Bay "asked him if he thought I would be qualified for it, and he agreed [Mr. Bay] was." [*Id.*] Mr. Rogers informed Mr. Piro and his superior, Brian Keller, of Mr. Bay's interest in the Vice President of Construction position. [Docs. 38, 42 at ¶ 11.]

In late September to early October of 2004, Mr. Piro promoted Geoff Geddes ("Mr. Geddes") to the Vice President of Construction position. [Docs. 24, 40 at ¶ 41.] At the time of his promotion, Mr. Geddes was 43 years old. [*Id.* at ¶ 35.] The Defendants contend that Mr. Geddes was hired because he had expressed interest in the position, had an architectural degree, was a licensed architect, had significant new concrete high-rise development experience, and lived in Orlando. [*Id.*] In late September to early October 2004, Mr. Geddes took over the day-to-day supervision of Construction Directors and assumed the other duties of the Vice President of Construction, though Mr. Rogers did not officially leave Cendant until December 31, 2004. [*Id.* at ¶ 44.] By mid-October 2004, Mr. Bay began reporting to Mr. Geddes as his supervisor. [*Id.* at ¶ 45.]

In early 2004, Cendant informed Mr. Bay that his pay raise would be delayed, and he spoke to Mr. Piro about this issue in late 2004 or early 2005. [*Id.* at ¶¶ 50, 51.] In March 2005, Mr. Geddes and Mr. Piro authorized Mr. Bay to receive at $10,000 pay raise. [*Id.* at ¶ 51.]

In 2005, Mr. Bay alleges he heard about a dozen comments about the "old way" or "old school way," including such three such comments by Mr. Geddes and two to three such comments by Mr. Piro. [Docs. 24, 40 at ¶¶ 58, 65, 67; 24-2 at 26.] Mr. Bay also claims a Cendant estimator, Marc Rogers, referred to an individual as "one of the old guys that still hadn't come around yet." [*Id.* at ¶ 61.]

In early 2004, Mr. Bay had the authority and sought to hire a project manager to help him exclusively. [*Id.* at ¶ 54.] During the reorganization, this authority to hire was put on hold. [*Id.* at ¶ 55.] Mr. Bay contends that the Defendants "dramatically increased [his] work load without providing adequate support staff and then were critical of the quality, content, or quantity of said work and, as a result ostensibly thereof, began to take major projects away from [Mr. Bay] and re-assign them to younger, less experienced managers in the corporate office." [Doc. 1 at ¶ 13.] Defendants contend that Mr. Geddes understood that Mr. Bay was stressed, felt overworked, believed he had too many projects, and had personal problems at home. [Docs. 24, 40 at ¶ 74.] Defendants contend that Cendant hired Gary Watters ("Mr. Watters") as a Construction Director to alleviate Mr. Bay's workload rather than hiring a project manager to work exclusively for Mr. Bay. [*Id.* at ¶¶ 57, 76, 77.] Cendant reassigned the La Belle Maison project in New Orleans, Louisiana to Mr. Watters. [*Id.* at ¶ 80.] Mr.

Bay also alleges that Mr. Geddes harassed him by criticizing him to be more involved with no specifics or discipline.  [*Id.* at ¶¶ 87, 88.]   Additionally, he claims he was cut off from communication with Cendant's upper management.  [*Id.* at ¶ 101.]

Mr. Bay alleges that Mr. Geddes gave him an ultimatum of three to four weeks prior to his resignation that he had to move to Orlando "soon" or "there would be no position" for him at Cendant.  [*Id.* at ¶ 112.]  Defendants contend that Mr. Geddes never told Mr. Bay that he would be terminated.  [*Id.* at ¶ 113.]

In April of 2005, Mr. Bay spoke with Mr. Rogers about possible employment with a Cendant competitor, Bluegreen.  [*Id.* at ¶ 117.]  In late May or early June 2005, Mr. Bay had further discussions with Mr. Rogers about employment with Bluegreen.  [*Id.* at ¶ 119.]  After Mr. Geddes allegedly told  him he would be required to relocate to Orlando "soon," Mr. Bay told Mr. Geddes he was going to resign.  [*Id.* at ¶ 119.]  One June 13, 2005, Bluegreen offered Mr. Bay a job performing the same or substantially similar duties to those he was performing at Cendant.  [*Id.* at ¶ 122.]  On June 17, 2005, Mr. Bay tendered his immediate resignation from Cendant; he did not receive a severance package despite attempts to get one from Cendant just prior to his resignation.  [*Id.* at ¶¶ 122, 125, 126.]  Mr. Bay began working at Bluegreen days after his resignation from Cendant.  [*Id.* at ¶ 130.]  At the time of his resignation from Cendant, Mr. Bay was 52 years old.  [*Id.* at ¶ 10.]

On September 5, 2005, Mr. Bay filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC").  [Doc. 1 at ¶ 20.]  On August 16,

2006, Mr. Bay filed his complaint alleging that the Defendants violated the ADEA. [*see* Doc. 1.]


## II.     Analysis

### A.     Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  The burden of establishing there is no genuine issue of material fact lies upon the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986).  The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).  To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law.  *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the

truth of the matter. *Id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

B.    Age Discrimination Claims

The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Mr. Bay makes seven general claims of age discrimination under the ADEA: (1) his non-selection as Vice President of Construction; (2) his constructive discharge; (3) the reassignment of one of his projects to another Director of Construction; (4) Mr. Geddes's criticism of Mr. Bay's work performance; (5) Mr. Bay's inability to communicate with management; (6) the delay in Mr. Bay receiving his 2004 pay raise; and (7) the delay in Mr. Bay's ability to hire a Project Manager. [Docs. 1 at ¶¶ 11, 12; 24 at ¶¶ 48-57, 87, 101.]

1.    Time-Barred Claim

Mr. Bay claims that the Defendants discriminated against him on the basis of age when he was "passed over for the promotion to Vice President of Construction," which was given to a "younger, less experienced employee." [Doc. 1 at ¶ 12.] In their motion for summary judgment, the Defendants contend that this claim is "time barred because [Mr. Bay] failed to file a timely Charge with the EEOC." [Doc. 23 at 5.] Mr. Bay does not address the

time bar argument in his response to the Defendants' motion for summary judgment. [Doc. 37.] Rather, he argues that there exists disputed material facts in this case, thus precluding summary judgment. [*Id.* at 2.]

Before addressing arguments regarding genuine issues of material fact, the Court must first determine whether Mr. Bay's claim based upon the passed-over promotion is time-barred. Under 29 U.S.C. § 626(d), "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission" ("EEOC"). The statute further provides that "[s]uch a charge shall be filed . . . within 300 days after the alleged unlawful practice occurred." *Id.* at § 626(d)(2). In other words, a plaintiff must file a charge with the EEOC within 300 days of a discriminatory act, or any claims arising from that act will be dismissed as untimely. *See Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 375-76 (6th Cir. 2002).

The Sixth Circuit has held that "the proper focus for purposes of determining the commencement of the 300-day limitations period is on the discriminatory act itself and when that act was communicated to the plaintiff." *Amini v. Oberlin Coll.*, 259 F.3d 493, 500 (6th Cir. 2001). In the present case, the parties agree that the promotion of Mr. Geddes was communicated to the Directors of Construction, like Mr. Bay, "in or around late September to early October 2004." [Docs. 24, 40 at ¶ 43.] Mr. Bay's filing with the EEOC occurred on September 5, 2005. [Doc. 1 at ¶ 20.] Calculating from the latter October 2004 date, the September 5, 2005 filing was still nearly a month after the period required by 29 U.S.C. §

626(d)(2).  Furthermore, Mr. Bay does not dispute that his EEOC charge was untimely filed.

[*See* Doc. 37.]  Thus, the age discrimination claim arising from Mr. Bay's non-selection as

the Vice President of Construction is time-barred.  Accordingly, the Court need not address

the substantive arguments regarding this specific claim.

      2.    <u>Direct Evidence of Age Discrimination</u>

The prima facie case for age discrimination may be established by presenting either

direct or indirect evidence of discrimination.  Notably, the analytical framework under the

ADEA is the same as the framework under Title VII.  *Policastro v. Northwest Airlines, Inc.*,

297 F.3d 535, 538 (6th Cir. 2002).  "Direct Evidence of discrimination is that evidence

which, if believed, requires the conclusion that unlawful discrimination was at least a

motivating factor in the employer's actions."  *Briggs v. Potter*, 463 F.3d 507, 514 (6th Cir.

2006) (quoting *Wexler v. White's Fine Furniture*, 317 F.3d 564, 570 (6th Cir. 2003)).  In

other words, direct evidence proves the occurrence of discrimination without requiring

further inferences.  *Reeves v. Swift Trans. Co.*, 446 F.3d 637, 640 (6th Cir. 2006).

In the present case, Mr. Bay has not shown any direct evidence of discriminatory animus.

Messrs. Piro and Geddes are alleged to have made statements about Mr. Bay and

others being "old school" and engaging in the "old way of doing things." [Docs. 24, 40 at ¶¶

65, 67.] Another statement by Marc Rogers, a non-management employee, referred to an

unidentified employee as "one of the old guys who still hasn't come around yet." [*Id.* at ¶¶

61, 63, 64.] Defendants argue that these statements are not direct evidence of discrimination

because they are vague and ambiguous as to whether they refer to Mr. Bay's age or to the way things were done at Fairfield prior to Cendant's purchase.

The Sixth Circuit has previously held that "comments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination." *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003) (citing *Hopson v. DaimlerChrysler Corp.,* 306 F.3d 427, 433 (6th Cir. 2002)). Mr. Bay has not presented any evidence establishing Marc Rogers's direct involvement in the management, promotion, or termination decisions at Cendant. Furthermore, it is undisputed that Mr. Bay never reported to Marc Rogers at any time during his employment with Cendant. [*Id.* at ¶ 64.] Thus, Marc Rogers's alleged statement is not direct evidence of age discrimination.

Furthermore, the statements by Messrs. Piro and Geddes are not direct evidence of discrimination because they require further inferences which are incompatible with the definition of direct evidence. *See Minadeo v. ICI Paints*, 398 F.3d 751, 764 (6th Cir. 2005). Mr. Bay does not dispute that the statements "were used to draw a comparison between the way Fairfield used to do business and the way [Cendant] currently does business." [Docs. 24, 40 at ¶ 59.] However, Mr. Bay also suggests that the statements were "tied to old ways of doing things" and "directly tied to the older guys that were doing them that way." [Doc. 24-2 at 26.] As the statements are subject to multiple interpretations by even Mr. Bay, they require further inferences and are, accordingly, not direct evidence of discrimination.

3.     Circumstantial Evidence of Discrimination

To establish a prima facie case by relying upon circumstantial evidence, the plaintiff must show that: (1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) defendant filled the position with a person younger than the plaintiff. *See Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007) (citation omitted). "The fourth element may be replaced with the requirement that the plaintiff show [he] was treated differently from similarly-situated individuals" in disparate treatment cases. *Policastro*, 297 F.3d at 539. If the plaintiff establishes the prima facie case, the burden shifts to the defendant to "articulate a non-discriminatory reason for its adverse employment action." *Tuttle*, 474 F.3d at 317. If the defendant articulates a non-discriminatory reason, the plaintiff "must demonstrate by a preponderance of the evidence that the defendant's proffered reason was pretext for age discrimination. *Id.* A plaintiff can demonstrate pretext by showing by a preponderance of the evidence that the proffered reason either (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *See Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 624 (6th Cir. 2006). Ultimately, the plaintiff must prove that age played a "determinative" role in the challenged decision, which requires that the unlawful age-related factor have played a role in the employer's decision and have had a determinative influence on the outcome. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). As to all of Mr.

Bay's age discrimination claims, he has satisfied the first required element because he was more than 40 years old during the relevant period at issue.

### a. Constructive Discharge

The standard for a constructive discharge requires "a determination that 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Smith v. Henderson*, 376 F.3d 529, 533-34 (6th Cir. 2004) (quoting *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982)). If Mr. Bay presents sufficient evidence to establish constructive discharge, then he has satisfied the second required prima facie element, namely that he suffered an adverse employment action. *See Policastro*, 297 F.3d at 539.

Mr. Bay claims that the criticism of his work, the contentiousness with Messrs. Piro and Geddes, comments about the "old way" and "old school," his dramatically increased work load without the authority to hire support staff, the reassignment of one of his projects, and the threat of termination that if he did not relocate to Orlando "constructively terminated and forced [him] to resign from employment with the Defendants." [Doc. 1 at ¶ 11, 13, 14.] Much of the conduct of which Mr. Bay complains is insufficient for a constructive discharge claim. *See Smith*, 376 F.3d at 534 (finding actions including refusal to permit delegation of work to subordinate employee and criticism in front of subordinates as "normally . . . insufficient to establish a constructive discharge as a matter of law"). "Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Id.* (quoting

*Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994)). Thus, the criticism, the comments, lack of authority to hire support staff, and the general contentiousness complained of by Mr. Bay fail to rise to the level required for a constructive discharge.

Along with the above complained of conduct, Mr. Bay also claims that the "threat of relocation [to Orlando] was simply another instrument used by the Defendants against him to force him to resign." [Doc. 1 at ¶ 14.] The Sixth Circuit has "not precluded consideration of such factors as commuting distance or relocation" in determining whether a constructive discharge has occurred. *Keeton v. Flying J., Inc.*, 429 F.3d 259, 264 (6th Cir. 2005). However, the facts of this case do not support such a claim based on relocation. It is undisputed that Mr. Piro implemented a policy whereby all employees at Mr. Bay's level and above would be centralized in Orlando, and existing employees, including Mr. Bay, would eventually be asked to move. [Docs. 24, 40 at ¶¶ 104, 105.] It is also undisputed that the centralization of employees in Orlando was implemented to improve Cendant's efficiency and effectiveness. [*Id.* at ¶ 106.] These undisputed facts show that the request for relocation to Orlando had a legitimate business purpose and was not solely limited to Mr. Bay.

Mr. Bay has presented no evidence that the relocation would involve any reduction in salary, decrease in benefits, diminution in responsibility, a modification of title, or any other facts that would support a claim of constructive discharge. *See Policastro*, 297 F.3d at 539. In fact, Messrs. Piro and Geddes authorized Mr. Bay to receive a $10,000 pay raise only months prior to the request for relocation. [Docs. 24, 40 at ¶ 51]. Essentially, the request of relocation to Orlando to Mr. Bay was no different than the requirements for other

14

Cendant employees of his similar level. "[U]nless the evidence is sufficient to permit a rational trier of fact to infer that the employer deliberately created working conditions that were 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign,'" a claim of constructive discharge must be dismissed as a matter of law. *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 361 (2nd Cir. 1993) (citations omitted). Such must be the result as to the claim in this case.

### b.    Reassignment of a Project to Another Director of Construction

Mr. Bay also claims age discrimination when the La Belle Maison building project was reassigned to Mr. Watters. Defendants contend that the reassignment of one project was not an adverse job action. An adverse employment action involves a "materially adverse change in the terms and conditions of employment [that] must be more disruptive that a mere inconvenience or an alteration of job responsibilities." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007) (quoting *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 553 (6th Cir. 2002)). Examples include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, or significantly diminished material responsibilities. *Id.*

In Mr. Bay's claim based on reassignment of the La Belle Maison project, he has not presented sufficient evidence of an adverse employment action. He has not shown that he experienced a decrease in wage or salary or received a less distinguished title as a result of the reassignment. Furthermore, the evidence presented does not support a contention that the reassignment to Mr. Watters resulted in significantly diminished material responsibilities

15

for Mr. Bay. Even after the reassignment of the La Belle Maison project, Mr. Bay continued working on other Cendant projects. Mr. Bay described one of the remaining projects, Avenue Plaza in New Orleans, as "extremely challenging." [Doc. 24-2 at 22.] He remained on the Smokies project, described as one of Cendant's largest. [Docs. 24, 40 at ¶ 81.] Mr. Bay also alleges that Mr. Geddes assigned him to a new building project, the Sterling Palms, in Destin, Florida. [Doc. 38 at ¶ 8.] This indicates that Mr. Bay's remaining projects still required his responsibility and skills in a manner incompatible with a case of significantly diminished material responsibilities. Accordingly, he has not satisfied the second element of the prima facie case and cannot prevail on his claim based on the reassignment of the La Belle Maison project to Mr. Watters.

c.     Criticism of Work Performance

Mr. Bay also claims that the criticism of his work performance by Mr. Geddes constituted an adverse employment action. Defendants contend that Mr. Bay suffered no adverse job action, that any criticism was legitimate and non-discriminatory, and that Mr. Bay cannot establish pretext in this case. The Sixth Circuit has recognized that "a negative performance evaluation does not constitute an adverse employment action, unless the evaluation has an adverse impact on an employee's wages or salary." *Tuttle*, 474 F.3d at 322 (citations omitted). Mr. Bay did not suffer any change in title, loss of pay, benefits, or other material terms or conditions of employment. [Docs. 24, 40 at ¶ 89.] He further admits never receiving any formal or written reprimands from Mr. Geddes or Mr. Piro. [Docs. 24, 40 at ¶ 90.] Because Mr. Bay has suffered no adverse employment action as a result of the alleged

16

criticism, he has not satisfied the second prong of the prima facie case and cannot prevail on this claim.

### d. Inability to Communicate with Management

Mr. Bay also alleges that he was cut off from communication with upper Cendant management. [Docs. 24, 40 at ¶ 101.] Defendants argue that this claim does not constitute an adverse employment action. Similar to Mr. Bay's discrimination claim based on criticism by management, he presents no evidence that he suffered any negative impact on his wages or salary as a result of this inability to communicate with management. *See Tuttle*, 474 F.3d at 322. Additionally, his claims are unsupported by the undisputed material facts in this case. Mr. Bay could access Messrs. Piro and Geddes by email, telephone, in person by attending weekly meetings, and during conference calls. [Docs. 24, 40 at ¶ 101.] He does not dispute speaking with or emailing Messrs. Piro and Geddes on several occasions. [*Id.* at ¶ 102.] For instance, Mr. Bay spoke with Mr. Piro in late 2004 or early 2005 about a delay in his pay raise, and by March 2005, he received a $10,000 pay raise. [*Id.* at ¶ 51.] The record also includes email exchanges between Mr. Geddes, Mr. Piro, and Mr. Bay, suggesting that at least this line of communication was open and used by Mr. Bay and Cendant management. [*See* Docs. 24-3 at 7-8; 27-3.] Such undisputed facts and evidence fail to demonstrate how Mr. Bay suffered any adverse employment action based on his inability to communicate with Mr. Geddes and Mr. Piro. Thus, he cannot prevail on this age discrimination claim.

### e.    Delay in Receiving Pay Raise

Mr. Bay also claims that the delay in pay raise that he did not receive until March 2005 and his inability to hire an assistant constituted age discrimination. The Defendants contend that Mr. Bay has provided no evidence that his age was related to these delays. Mr. Bay's claim cannot prevail because he fails to satisfy the fourth element of the prima facie case, namely that he was treated differently from similarly-situated individuals of the unprotected class. *Policastro*, 297 F.3d at 539. It is undisputed that Cendant was in the process of reorganizing Fairfield when the pay raise freeze was implemented. [Docs. 24, 40 at ¶ 48, 55.] Furthermore, Mr. Bay presents no evidence of similarly-situated individuals under the age of 40 not being subject to the same pay raise freeze. Accordingly, Mr. Bay has not satisfied the prima facie case as to his age discrimination claim based upon the delayed pay raise.

### f.    Inability to Hire a Project Manager

Mr. Bay claims that his inability to hire a Project Manager to assist him amounted to age discrimination. [Docs. 24, 40 at ¶ 53.] Defendants counter that his authority to hire was put on hold in light of the Fairfield reorganization. [Docs. 24 at ¶ 55.] Similar to Mr. Bay's other age discrimination claims, he cannot prevail because the complained of conduct simply does not rise to the level of an adverse employment action. *See Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2007) (holding that a medical professor's loss of a graduate research assistant did not amount to an adverse employment action). In the present case, the inability to hire a Project Manager was not a materially adverse employment action because

a "mere inconvenience or an alteration of job responsibilities is not enough to constitute an adverse employment action." *Id.* (quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)). Mr. Bay has presented no evidence of how the inability to hire a Project Manager diminished his material responsibilities at Cendant. Accordingly, Mr. Bay cannot succeed on this claim of age discrimination as he suffered no adverse employment action.

C.     Hostile Work Environment Claim

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Based on this statute, the Sixth Circuit has held that "a plaintiff may advance a hostile-environment claim under the ADEA." *See Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996). The prima facie elements of a hostile work environment claim are: (1) the employee is 40 years old or older; (2) the employee was subjected to harassment, either through words or actions, based on age; (3) the harassment had the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer. *Id.* at 834-35. The determination of whether an environment is "hostile" or "abusive" requires looking at the totality of circumstances. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998). Furthermore, the conduct must be both objectively and subjectively hostile or abusive. *Harris v. Forklift Sys.*, 510 U.S. 17, 21-22 (1993).

In the present cause of action, Mr. Bay points to the following incidents and occurrences as demonstrating a hostile work environment: (1) the sudden criticism of his work; (2) the use of phrases like "old way" or "old school way"; (3) the growing contentiousness of conversations with Mr. Geddes and Mr. Piro; (4) the dramatic increase in Mr. Bay's work load without providing adequate support staff; (5) the reassignment of one of Mr. Bay's major projects to a younger, less experienced manager; and (6) the threat of imminent termination if he did not relocate to the Orlando office. [Docs. 24-2 at 25-26, 27; 1 at ¶¶ 11, 13, 14.] In viewing all facts and all inferences in a light most favorable to Mr. Bay as the non-moving party, the Court finds that he has failed to establish the prima facie case for his hostile work environment claim.

Assuming Mr. Bay has satisfied the first prima facie element as to the age threshold requirement, he has not presented sufficient evidence that the conduct of which he complains was based on his age. The Sixth Circuit has held that "alleged harassing acts cannot be considered in the hostile environment analysis" when a plaintiff has "not shown that the [] conduct he complains of had anything to do with his [status as a member in a protected class]." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000). In the present case, Mr. Bay relies on comments by Mr. Geddes, Mr. Piro, and another Cendant employee about the "old way" and "old school way" from which anti-age bias could be inferred. [Doc. 24-2 at 25.] Defendants argue that such comments refer to the former business practices of Fairfield, not the age of certain employees. [Doc. 23 at 21]. In *Peecook v. Northwestern Nat'l Ins. Group*, No. 96-4318, 1998 WL 476245, at * 3 (6th Cir. Aug. 3, 1998), the Sixth

Circuit found the comment "perhaps you are too old to change" to be "too amorphous to constitute age-based 'harassment.'" Likewise in the present case, the comments about the "old way" and "old school way" are far too speculative to be considered "objectively indicative of age-based animus." *See Crawford*, 96 F.3d at 833, 836 (holding that the comment "the old side, the dumb side, worthless side" as not objectively indicative of age-based animus). Without sufficient age-based evidence, his complaints about the criticism regarding his work and the growing contentiousness between himself and Messrs. Piro and Geddes merely reflect an "atmosphere [that] stemmed from a simple clash of personalities." *Id*. at 836. As the Sixth Circuit has previously held, "[p]ersonality conflicts alone . . . will not support an AEDA [sic] claim." *Peecook*, 1998 WL 476245, at *3. Likewise, Mr. Bay has presented no evidence that the inferred a threat of termination from Mr. Geddes regarding the requirement of Mr. Bay to relocate was based on age. [Doc. 24-2 at 27]. Thus, Mr. Bay has not satisfied the second required element of the prima facie case.

Mr. Bay has also failed to satisfy the third required element of the prima facie case because the incidents and occurrences alleged are not "'sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment'." *Harris*, 510 U.S. at 21 (quoting *Meritor Sav. Bank, F.S.B. v. Vinson*, 477 U.S. 57, 67 (1986)). Factors to consider in this analysis include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Considering all of the incidents Mr. Bay complains of as a whole, his allegations simply lack the frequency and severity as compared to other cases that have survived summary judgment. *See Jackson v. Quanex Corp.*, 191 F.3d 647, 647-68 (6th Cir. 1999) (involving a plaintiff subject to incidents of racist slurs, racist graffiti, physical assaults, and other interference with job duties). None of the comments of which Mr. Bay complains were physically threatening; they were not severe and pervasive; and, as noted earlier, Mr. Bay does not dispute that many of the statements "were used to draw a comparison between the way Fairfield used to do business and the way [Cendant] currently does business." [Docs. 24, 40 at ¶ 59.] Also, the criticism, of which Mr. Bay complains, was simply Mr. Geddes's comment that Mr. Bay "needed to be more involved." [Doc. 24-2 at 29.] There were no written reprimands of any kind from Mr. Geddes or Mr. Piro. [*Id.*] Additionally, Mr. Bay did not appear to subjectively view the criticism and contentiousness as so abusive as to alter the conditions of his employment. In his deposition, Mr. Bay stated that "had they at any point in time called me and talked to me about staying with the company and let me know that I was welcome to stay with the company and let me know what position I was going to have if I move to Orlando, then I would have never left the company." [Doc. 24-2 at 33.] Thus, the comments, criticism, and contentiousness were not so abusive that prevented Mr. Bay from wanting to continue his employment with Cendant.

Finally, Mr. Bay points to a conversation with Mr. Geddes as the time he was threatened with imminent termination as supporting his hostile work environment claim. [Doc. 24-2 at 27]. A hostile work environment claim involves "unlawful employment practices that cannot be said to occur on any particular day, but occur over a series of days or years." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (citing *Nat'l R.R. Passenger Corp., v. Morgan*, 536 U.S. 101, 115 (2002)). This sole alleged threat of imminent termination is inapposite under a hostile work environment claim because it is a discrete act. *See Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 708 (6th Cir. 2007) ("This is more akin to a discrete act, which is decidedly not actionable as a hostile-work-environment claim."). Even if considered as part of the hostile work environment claim, the alleged threat to relocate simply lacks the required frequency, severity, or pervasiveness.

As Mr. Bay has failed to establish both the second and third prima facie elements of a hostile work environment claim, it is unnecessary for this Court to address employer liability, the fourth prima facie element.

After evaluating Mr. Bay's allegations, he has failed to provide the requisite support to establish a prima facie case for his hostile work environment claim. Accordingly, Defendants' motion for summary judgment as to this claim is granted.

**III.    Conclusion**

For the reasons set forth herein, Fairfield Resorts, Inc. and Cendant Timeshare Resort Group, Inc.'s motion for summary judgment [Doc. 22] will be **GRANTED**, whereby plaintiff James E. Bay's claims will be **DISMISSED with prejudice**.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE